[No. 4434.]

BROWNLEE v. WILLIAMS· ET AL.

1.  **Adverse Possession—Mistake as to Boundary.**

Possession of and improvements made on adjoining land by .a land owner under a mistake as to the boundary line and belief that the improvements were made on his own land does not constitute adverse possession.

2.  **Same—Bond for Title.**

One holding land under a bond for title from the owner has a right to improve the same and the making of such improvements could not operate to put the obligor of the bond upon inquiry although such improvements were made .by the obligee under the belief that he was improving his own adjacent land. Such possession and improvements made during the existence of the bond could not constitute adverse possession.

*Appeal from the District Court of Morgan County.*

Messrs. TALBOT, DENISON & WADLEY for appellant.

Mr. W. A. HILL and Mr. L. C. STEPHENSON for appellees.

Mr. JUSTICE STEELE delivered the opinion of the court.

In the year 1886 Solon D. Martin was seized in fee of the southwest quarter of section 7, township 4 north, range 58 west, and executed to George F. Brownlee a bond for a deed therefor. In the year 1888, Brownlee entered the southeast quarter of the same section as a homestead. From that time until

July, 1896, he was in possession of both quarters, and used them together as a farm.  On December 20, 1895, suit was brought by Martin against Brownlee for the purpose, among other things, of foreclosing his bond and of quieting his title to the southwest quarter of the section.  That suit was disposed of by stipulation, and it was agreed by and between the parties that the defendant, Brownlee, should move the house theretofore moved from the southwest quarter back upon said premises, and that he should quitclaim the said southwest quarter to Martin; that Martin should deliver up certain notes given him by Brownlee, and that he should assume a certain note given for water rights.  It was further agreed that the action should be dismissed and that these things, when done, should settle and discharge all claims of either party against the other.  The agreements were performed upon both sides, and the suit was dismissd.  Brownlee surrendered possession of the southwest quarter to Martin excepting about twenty-eight and one-half acres, which he, Brownlee, had fenced with, and as a part of, the southeast quarter in 1895.  Martin died in 1897, and the appellees succeeded to his title.  On July 18, 1900, they brought suit in ejectment to recover the possession of the twenty-eight and one-half acres of land in dispute.  The suit resulted in a judgment for the plaintiffs, and the defendant has appealed to this court.

Upon the trial there was some testimony given by the defendant tending to show an agreement between the defendant and Martin as to the division line.  An issue was made as to whether there was such an agreement, and the jury found against the defendant, under proper instructions.  It is at least doubtful whether the defendant's testimony, if uncontradicted, would have sustained a verdict in his favor upon this point.  On cross-examination he said:

"Q. You have stated in your direct examination that Mr. Martin saw this fence there; when did you make any agreement with Mr. Martin as to where this line should be? A. In about '89.

Q. What was the consideration for the agreement? A. There wasn't any consideration.

Q. Did he agree to any line? A. He did.

Q. How? A. Why, by consenting to my putting the fence up.

Q. You remember your testimony six months ago, do you? Did you state at that time of his agreeing to a line? A. He agreed to the line by not objecting to my cutting hay.

Q. Mr. Brownlee, did you have a conversation with—in March or April, 1900, with Ed. Williams, when he went to see you on the place, in which you went down with him and his father where you live there on this southwest quarter of 7, and that you stated to them that as soon as the river went down and you could get Ed. Baker down to survey the line that wherever he would determine it that you would be willing to be governed accordingly, and that you did not want any part of the southwest quarter of 7? A. Why, providing they got a correct survey of it.

Q. Then at that time you did not claim any agreed line, did you? A. Why, I claimed it up to that fence, where I maintained my house, I did, most certainly I did."

The assignments of error relied on to reverse the case are numerous, but they all relate to the giving and refusing of instructions relative to the defendant's claim of title to the twenty-eight and one-half acres by adverse possession and the payment of taxes. During the years from 1888 to 1896 Brownlee was in possession of the southwest quarter under the bond for deed from Martin, and in possession of the southeast quarter under his homestead entry.

He was mistaken, and no doubt honestly mistaken, as to where the dividing line should be, and made some slight improvements on the southwest quarter which he at the time thought he was making on his homestead, but this could not be regarded as an adverse possession.  Having a bond for a deed to the southwest quarter, he had the right to put whatever improvements he pleased upon it, and Martin, of course, was not put upon inquiry by the making of such improvements.  Brownlee therefore was not in a position to hold as a part of his homestead and adversely to Martin any part of the southwest quarter until after the settlement of their differences by the stipulation of July 6, 1896.  By that stipulation Brownlee agrees, "That he will quitclaim by deed to said plaintiff the premises and property described in said title bond sued upon."

We can find nothing in the record tending in the remotest degree to support the contention of the defendant that there was any real or supposed boundary dispute settled by this stipulation, or that any such dispute was in existence at that time.  Brownlee was to reconvey to Martin the land described in the bond for deed, and he did so.  The deed recites that "Said Martin, having on the 19th day of August, 1886, made to Brownlee his bond for deed for said premises and the same having been recorded in Weld county, Colorado, December 11, 1886, of which county Morgan county was then a part, in book 66 on page 71, now the purpose of this deed is to perfect the title to said premises back in Martin, to have and to hold the same, together with all the appurtenances and privileges thereunto belonging or in any wise thereunto appertaining, and all the estate, right, title, interest and claim whatsoever of the said party of the first part either in law or equity to the only proper

use and behoof of the said party of the second part, his heirs and assigns forever.''

We think, therefore, that the period of Brownlee's adverse possession was too short to be submitted to the jury as a possible defense or source of title in this case, and that the errors complained of were without prejudice to any right existing in the defendant.

For the reasons given the judgment is affirmed.

*Affirmed.*